K. Lee Marshall, SBN 277795
klmarshall@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111-4070
Telephone:     (415) 675-3400

Erin A. Kelly (Admitted *pro hac vice*)
erin.kelly@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
1700 Lincoln Street, Ste. 4100
Denver, CO  80203
Telephone:  (303) 861-7000

George C. Chen (*pro hac vice* to be filed)
george.chen@bclplaw.com
Cory G. Smith (*pro hac vice* to be filed)
cory.smith@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
Two North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 364-7000

*Attorneys for Plaintiff*
*Invitae Corporation*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| INVITAE CORPORATION, | Case No.: 4:22-cv-00784-HSG |
| Plaintiff, | Hon. Haywood S. Gilliam |
| v. | **NOTICE OF MOTION AND MOTION OF INVITAE CORPORATION TO DISMISS DEFENDANT OPTRAHEALTH'S COUNTERCLAIM** |
| OPTRAHEALTH, INC., | |
| Defendant. | **Date:** |
| | **Time: 2:00 pm** |
| | **Dept.:** |
| | Complaint Filed:  February 7, 2022 |
| | Trial Date:        Not Assigned |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

# **TABLE OF CONTENTS**

I.      Introduction. ................................................................................................. 1

II.     Factual Background. ...................................................................................... 3

        A.      The Asserted Patent. ........................................................................... 3

        B.      OptraHealth's Infringement Allegations. ............................................ 4

III.    Patent Eligibility is a Threshold Question of Law that is Appropriately Decided
        Upon a Motion to Dismiss. ............................................................................ 7

IV.     Legal Standard and Argument. ....................................................................... 8

        A.      35 U.S.C. § 101 Does Not Permit Patenting of Abstract Ideas. ........... 8

        B.      The '882 Patent is Directed to Patent-Ineligible Subject Matter. ......... 10

                1.      Claims 1 and 3 Are Ineligible under *Alice* Step 1 Because They
                        Are Directed to an Abstract Idea. ........................................... 11

                2.      Claims 1 and 3 Are Ineligible under *Alice* Step 2 Because They
                        Do Not Recite an Inventive Concept. ...................................... 16

        C.      *Twombly* Pleading Standard Requires Plausible, Non-Speculative
                Factual Allegations. ........................................................................... 21

        D.      OptraHealth's Conclusory Allegations Fail to Satisfy the Pleading
                Standard. ............................................................................................ 22

                1.      Indirect Infringement Allegations. ......................................... 23

                2.      Willfulness Allegations. ........................................................ 24

V.      Conclusion. ................................................................................................. 24

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ................................................................. 17

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ................................................................. 20

*Aftechmobile Inc. v. Salesforce.com, Inc*.,
   No. 19-CV-05903-JST, 2020 WL 6129139 (N.D. Cal. Sept. 2, 2020),
   *aff'd*, 853 F. App'x. 669 (Fed. Cir. 2021) ................................................. 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ........................................................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................... 21, 23

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
   915 F.3d 743 (Fed. Cir. 2019) .................................................................. 7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ............................................................... 12

*Bascom Research., LLC v. LinkedIn, Inc.*,
   77 F. Supp. 3d 940 (N.D. Cal. 2015) ...................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................... 21, 23

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ................................................................. 7

*Big Baboon, Inc. v. SAP Am., Inc.*,
   No. 17-CV-02082-HSG, 2018 WL 1400443 (N.D. Cal. Mar. 20, 2018) .............. 21

*CardioNet, LLC v. InfoBionic, Inc.*,
   816 F. App'x. 471 (Fed. Cir. 2020) ......................................................... 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ............................................................... 19

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7ᵀᴴ FLOOR
SAN FRANCISCO, CA 94111-4070

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020)................................................................. 16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)................................................................. 17

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x. 529 (Fed. Cir. 2020) ..................................................... 17, 20

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com*,
   No. 9:16-cv-81677, Dkt. 131 (S.D. Fla. Oct. 30, 2020) ............................ 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)................................................ 9, 10, 11, 13

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
   754 F. App'x. 996 (Fed. Cir. 2018) ........................................................... 7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016) .................................................................................. 24

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) ........................................................... 9, 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) .............................................................................. 9, 10

*MyMedicalRecords, Inc. v. Walgreen Co.*,
   No. 2:13-CV-00631-ODW SH, 2014 WL 7339201 (C.D. Cal. Dec. 23,
   2014) ..................................................................................................... 12

*Neochloris, Inc. v. Emerson Process Mgmt. LLLP*,
   140 F. Supp. 3d 763 (N.D. Ill. 2015) ...................................................... 13

*Novitaz, Inc. v. inMarket Media, LLC*,
   No. 16-CV-06795-EJD, 2017 WL 2311407 (N.D. Cal. May 26, 2017)..................... 21

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 701, 193 L. Ed.
   2d 522 (2015) .......................................................................................... 8

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
   379 F. Supp. 3d 857 (N.D. Cal. 2019), *aff'd sub nom. Dropbox, Inc. v.
   Synchronoss Techs., Inc.*, 815 F. App'x. 529 (Fed. Cir. 2020).................... 13

*People.ai, Inc. v. SetSail Techs., Inc.*,
    No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021)..................22, 23

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x. 1005 (Fed. Cir. 2014) ...................................................... 10

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
    No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022).....................................12

*Salwan v. Iancu*,
    825 F. App'x. 862 (Fed. Cir. 2020), *cert. denied sub nom. Salwan v.*
    *Hirshfeld*, 141 S. Ct. 2548, 209 L. Ed. 2d 567 (2021) .......................................... 12, 15

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)........................................................................7, 20

*SmartGene, Inc. v. Advanced Biological Lab'ys, SA*,
    555 F. App'x. 950 (Fed. Cir. 2014) ..........................................................14, 17

*Sonos, Inc. v. Google LLC*,
    No. C 21-07559 WHA, 2022 WL 799367 (N.D. Cal. Mar. 16, 2022)...............22, 24

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016).............................................................................. 10

*Tranxition, Inc. v. Lenovo U.S. Inc.*,
    664 F. App'x. 968 (Fed. Cir. 2016) ........................................................................ 16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378 (2018) ............................ 9

*Ubisoft Ent., S.A. v. Yousician Oy*,
    814 F. App'x. 588 (Fed. Cir. 2020) ...................................................................... 7, 8

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)........................................................................ 13

*Varian Med. Sys., Inc. v. Elekta AB*,
    No. 15-CV-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ............................ 21

*Visual Interactive Phone Concepts, Inc. v. U.S. Cellular Corp.*,
    220 F. Supp. 3d 867 (N.D. Ill. 2016) ...................................................................... 17

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

**Statutes**

35 U.S.C. § 101.................................................................................................*passim*

35 U.S.C. § 271(a) ....................................................................................................... 22

35 U.S.C. § 271(b) ....................................................................................................... 23

**Rules**

Fed. R. Civ. P. 8 .................................................................................................... 21, 24

Fed. R. Civ. P. 9 .................................................................................................... 22, 24

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 7, 21

**Other Authorities**

U.S. Patent No. 10,754,882 ....................................................................................*passim*

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on November 10, 2022, at 2:00 PM or as soon thereafter as the matter may be heard by the Honorable Haywood S. Gilliam, Jr. of the above-captioned Court, located at the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiff Invitae Corporation ("Invitae") will, and hereby does, move under Rule 12(b)(6) of the Federal Rule of Civil Procedure to dismiss the counterclaim filed in the above-captioned action by Defendant OptraHealth, Inc. ("OptraHealth") [ECF No. 43 (8/9/2022)] ("Counterclaim").

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, all records and pleadings on file in this action, and all other matters that the court may consider.

## STATEMENT OF RELIEF REQUESTED

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Invitae moves to dismiss OptraHealth's Counterclaim for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction.

The asserted claims of U.S. Patent No. 10,754,882 [ECF No. 43-1] (the '882 Patent) are patent-ineligible under 35 U.S.C. § 101 because the claims are directed to the abstract idea of collecting, analyzing and displaying medical information, which is a mental process, implemented on a generic computer.  ['882 Patent, 6:29-64]  The asserted claims are also

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

directed to the abstract idea of providing medical information requested by a patient, which is a method of organizing human activity, implemented on a generic computer.  [*Id*.]  In essence, the asserted claims attempt to broadly claim any healthcare-related chat application that uses only existing, well-known and routine computer functionality to mimic a conversation that a human could have.  The Accused Instrumentality, Invitae's Genetic Information Assistant or Gia ("Gia"), is a HIPAA-compliant clinical chatbot that facilitates virtual conversations with patients.  For example, Gia walks patients through their genetic test results and can also schedule patients for a call with an Invitae genetic counselor.  Both the asserted claims and Gia perform mental steps that a human could do.  However, none of the steps of the asserted claims, which Gia does not perform anyway, recite any inventive concept.  Under *Alice*'s two-step analysis for 35 U.S.C. § 101, the asserted patent claims are invalid because using chatbots to provide medical results to patients is merely an abstract idea with no inventive concept.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  The subject matter ineligibility of the '882 Patent is readily apparent from its face such that this issue may properly be determined on a motion to dismiss.

OptraHealth's Counterclaim should also be dismissed because it fails to meet basic pleading requirements by setting forth only conclusory allegations and failing to sufficiently plead direct, induced, and willful infringement.  OptraHealth fails to plead factual allegations demonstrating how the Accused Instrumentality, the Gia Chatbot, allegedly satisfies each step of the asserted method claims.  OptraHealth further fails to (i) plead plausible factual allegations demonstrating how Invitae induced or induces infringement and (2) state with particularity facts supporting the requisite conduct for its willful infringement claim.

1   Because OptraHealth cannot plead direct, indirect, or willful infringement claims, those

2   claims fail.

3   **II.   Factual Background.**

4       Invitae is a leading medical genetics company in the business of delivering genetic

5   testing services that support a lifetime of patient care.  [ECF No. 1 at §§ 10-12]  Invitae filed

6   this Declaratory Judgment action on February 7, 2022 in response to OptraHealth's ongoing

7   and persistent threats to bring a patent infringement lawsuit in Texas against Invitae. [*Id.* at

8   §§ 14-22]

9       OptraHealth filed a Counterclaim alleging Invitae's Gia Chatbot directly, indirectly,

10  and willfully infringes, literally or under the doctrine of equivalents, at least claims 1 and 3

11  of the '882 Patent, entitled "Method of Retrieving Information from a Health Report

12  Through a Machine Assisted Interrogation Process."  [*See generally Counterclaim*, ¶¶ 18-

13  33]

14      A.    The Asserted Patent.

15      The '882 patent purports to relate to a "method for a user to understand a personal

16  health report through an interrogation process."  ['882 Patent, 1:15-16]  The stated purpose

17  of the '882 Patent's interrogation process is "to simplify the process of understanding a

18  health report" by improving the "lack of communication between a healthcare professional

19  and a consumer," "clearly communicat[ing] the vital information of a health report," and

20  "provid[ing] information on what resulted in a certain health condition or on what can be

21  done to get rid of the condition."  [*Id*. at 1:20-49]  According to the specification, the stated

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

purpose of the invention is using "systems and personal-computing devices" to improve the mental process of understanding a health report.  [*Id*. at 1:45-49]

The claimed method purports to require a "personal assistance device," "reporting system," "query-interrogation system," and a "knowledge-graphing system."  [*Id*. at 6:32-64]  Specific hardware or software is not required by the claim language of the '882 Patent or even contemplated by the specification of the '882 Patent.  The only generic hardware mentioned is that the "personal assistance device" can be "a virtual assistance device, a personal computer or a mobile phone."  [*Id*. at 2:42-44]  Claim 3 requires the "personal assistance device" to be a "graphical user interface."  [*Id*. at 7:12-13]  The remaining components are described by the functions they perform without any recitation of the corresponding structure necessary to achieve those recited functions.

B.    OptraHealth's Infringement Allegations.

OptraHealth alleges that the Accused Product performs the steps of claims 1 and 3.  [Counterclaim, ¶¶ 21, 22, 24, 25].  Beyond these conclusory allegations, OptraHealth only makes blanket assertions devoid of specific facts as to how the Accused Product meets certain of the claimed limitations.

| Claim Language | Accused Product |
|---|---|
| **Claim 1 of the '882 Patent** | |
| 1. A method of retrieving information from a health report through a machine assisted interrogation process comprises the steps of: | "The Gia Chatbot is an automated genetic information assistant that returns genetic test results enabling customers to chat and review test results."[ECF No. 43 at p. 14]. |
| (A) providing a personal assistance device, wherein the personal assistance device is communicably coupled with a reporting system; | "'A HIPAA-complaint clinical chatbot, Gia facilitates virtual conversations with patients, including intake of family history and automatic delivery of results' reads on element (A) providing a personal assistance device, wherein the personal |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

| Claim Language | Accused Product |
|---|---|
| | assistance device is communicably coupled with a reporting system." [*Id.* at p. 15]. |
| (B) providing a reporting system, wherein the reporting system comprises a plurality of health reports and a query-interrogation system; | "You'll receive your patient's results and can follow up with them directly. Or you can choose for Gia to release results automatically, provide education, and facilitate an appointment with an Invitae genetic counselor when appropriate . . ." [*Id.*] |
| (C) receiving a health report-related query through the personal assistance device, wherein the health report-related query corresponds to a specific health report from the plurality of health reports; | "Through an interactive chatbot, Gia can walk your patients through their genetic test results or schedule them for a call with an Invitae genetic counselor . . ." [*Id.*] |
| (D) forwarding the health report-related query to the reporting system through the personal assistance device; | "Gia forwards queries to reporting systems (servers and processors run by Invitae) via mobile devices . . ." [*Id.* at p. 15-16]. |
| (E) selecting the specific health report from the plurality of health reports <u>through the query-interrogation system</u>; | "Invitae video shows patient selecting to view test results and 'your patient will be invited to chat with Gia.' Further, video screens show Gia reporting "Your results are negative. . ." [*Id.* at p. 16].<br><br><span style="color:red">There is no allegation that the recited "selection" step is done by the query-interrogation system.</span> |
| (F) compiling a corresponding knowledge corpus for the specific health report <u>through a knowledge-graphing system, wherein the corresponding knowledge corpus includes a query-related knowledge graph and a report-related knowledge graph</u>; | "'Automatically return results, answer questions, or facilitate an appointment with an Invitae genetic counselor' . . ." [*Id.*]<br><br><span style="color:red">There is no factual allegation regarding how the recited step of "compiling a corresponding knowledge corpus" that includes "a query-related knowledge graph and a report-related knowledge graph" is allegedly accomplished.</span> |
| (G) extracting a list of query-related information from the corresponding knowledge corpus of the specific health report by <u>comparing and associating the query-related knowledge graph with the report-related knowledge graph through the knowledge-graphing system</u>; | "Gia delivers results that are specific to the health reports based on the query (or user input) typed into the user's mobile device. . ." [*Id.*]<br><br><span style="color:red">There is no factual allegation regarding how the recited step of "extracting" by comparing and associating the query-related knowledge graph with the report-related knowledge graph through the knowledge-graphing system is allegedly accomplished.</span> |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

| Claim Language | Accused Product |
|---|---|
| (H) forwarding the list of query-related information from the reporting system to the personal assistance device; | "Gia's responses and results are provided through display output on the user's mobile device; this feature implies that Invitae forwards a list of query-related information from Invitae's servers to the patient's mobile device. . ." [*Id.* at p. 17]. |
| (I) converting the list of query-related information to an output content file through the query-interrogation system; and | "Gia's responses and results are provided through display output on the user's mobile device, which requires an output content file either on Invitae's server or on the user's mobile device. . ." [*Id.*] |
| (J) outputting the output content file through the personal assistance device. | "Gia's responses and results are shown displayed on the user's mobile device screen. . ." [*Id.*] |
| **Claim 3 of the '882 Patent** | |
| The method of retrieving information from a health report through a machine assisted interrogation process as claimed in claim 1 further comprises the steps of: wherein the personal assistance device is a graphical user interface; and displaying the output content file through the graphical user interface. | "Gia Chatbot is an automated personal genetic assistant with a graphic user interface (GUI) where the results and output are displayed on the GUI of the Gia Chatbot." [*Id.*] |

Notably, several important links are missing in OptraHealth's allegations including any explanation as to the following:

- "how" the Accused Product utilizes a query-interrogation system, or any other plausibly related system, to "select[] the specific health report from the plurality of health reports" as required by claim 1(E);

- "how" the knowledge-graphing system recited in claim 1(F) "compil[es] a corresponding knowledge corpus for the specific health report" including how the information allegedly accessed by the Accused Product relates to the information contained in the claimed "query-related knowledge graph" and the "report-related knowledge graph;" and

-6-
INVITAE'S MOTION TO DISMISS

- "how" the Accused Product performs the extraction step of claim 1(G) including how the alleged graphs, or any other plausibly related component, within the Accused Product are compared and associated.

### III. Patent Eligibility is a Threshold Question of Law that is Appropriately Decided Upon a Motion to Dismiss.

Patent eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts, that is particularly suitable for resolution at the pleading stage. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating "[l]ike other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law"); *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) ("[p]atent eligibility . . . may be resolved on a Rule 12(b)(6) motion when the undisputed facts require a holding of ineligibility.") (internal citations omitted).

Although, in certain circumstances, patent-eligibility may turn on underlying facts under *Alice* step two, importantly, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Indeed, a district court is not bound to accept as truth mere conclusory legal assertions. *Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 F. App'x. 996, 999 (Fed. Cir. 2018). In *Ubisoft Ent., S.A. v. Yousician Oy*, the Federal Circuit reiterated that "[t]he district court was not required to accept [patentee's] unreasoned conclusions and arguments in the absence of specific plausible allegations of supporting facts" and affirmed the district court's grant of a Rule 12(b)(6) motion where the patent claims were found to

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

recite ineligible abstract ideas).  814 F. App'x. 588, 589-92 (Fed. Cir. 2020).  Here, there are no material factual disputes that prevent the Court from deciding the Motion at this time.

Moreover, resolution of questions of patent-eligibility before extensive discovery is appropriate to avoid costly litigation on patent claims that are facially ineligible.[1]  Thus, courts have not only dismissed complaints at this stage, but also awarded attorneys' fees to discourage patent owners from using weak patents to extort settlements.  *E.g.*, *Elec. Commc'n Techs., LLC v. ShoppersChoice.com*, No. 9:16-cv-81677, Dkt. 131, at *8-9 (S.D. Fla. Oct. 30, 2020).

**IV.**   **Legal Standard and Argument.**

A.   35 U.S.C. § 101 Does Not Permit Patenting of Abstract Ideas.

Section 101 sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  Within these categories, the Supreme Court specifically recognizes three exceptions to patent eligibility: "laws of nature, natural phenomena, and abstract ideas."  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

---

[1]   *See* Judge Mayer's concurring opinion in *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364–65 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 701, 193 L. Ed. 2d 522 (2015) ("Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents.  Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings.  I commend the district court's adherence to the Supreme Court's instruction that patent eligibility is a "threshold" issue, by resolving it at the first opportunity.") (internal citations omitted).

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

Determining whether a patent impermissibly claims an abstract idea involves two steps.  In step one, the court determines "whether the claims at issue are directed to a patent-ineligible concept," *e.g.*, an abstract idea.  *Alice*, 573 U.S. at 218.  To determine whether the claim is "directed to" an abstract idea, the court must determine the "focus of the claimed advance over the prior art" — that is, what is the "character [of the claim] as a whole." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017).

If the claim is directed to an abstract idea, in step two, the court evaluates whether there is, *apart from the abstract idea*, "an 'inventive concept' — *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18.  The analysis often begins by comparing the claim at issue to similar claims that have been analyzed in previous cases.  *E.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016).  To save a patent at step two, the inventive concept "must be evident in the claims."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338–39 (Fed. Cir. 2017) (affirming patent-ineligibility because "[t]he main problem that [patentee] cannot overcome is that the claim — as opposed to something purportedly described in the specification — is missing an inventive concept"), *cert. denied*, 139 S. Ct. 378 (2018).

Moreover, a patentee cannot circumvent the prohibition on patenting abstract ideas by limiting the abstract idea to "a particular technological environment," or by adding "well-understood, routine, conventional" features.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–80 (2012).  Transforming an idea into a patent-eligible application of

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

the idea requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (*quoting Mayo*, 566 U.S. at 72). The Supreme Court confirmed that, in light of "the ubiquity of computers," claiming a "wholly generic computer implementation" of an abstract idea is insufficient to transform the concept into a patent-eligible invention. *Id.* at 223–24.

The Federal Circuit and district courts have closely followed this guidance to invalidate many claims, finding such claims to be directed to "fundamental" practices merely performed with conventional computers. *See, e.g.*, *Elec. Power Grp., LLC*, 830 F.3d at 1354-56 (invalidating claims for computerized process of gathering and analyzing information from an electric power grid). The Federal Circuit also has found claims unpatentable when they can be performed "entirely in the human mind." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146–47 (Fed. Cir. 2016); *see also Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x. 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use, but they also can be done mentally.") (internal quotation omitted).

B.   The '882 Patent is Directed to Patent-Ineligible Subject Matter.

The Asserted Claims are patent ineligible and claim nothing more than using standard computer equipment and a graphical user interface to retrieve and display information from a health report. ['882 Patent, 6:29-7:16] Put another way, the Asserted Claims simply use generic computer methods to perform the steps of reporting medical information to a patient. These are abstract concepts and are not made patentable by the use of generic computer elements.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

Alleged improvements involving "a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions" are routinely found to be directed to an abstract idea under Step 1 of the *Alice* framework. *Elec. Power Grp., LLC*, 830 F.3d at 1354. Implementing an abstract idea on an unspecified, generic computer without improvement to the functionality of the computer itself, does not transform the abstract idea to a patent-eligible technical solution to a technical problem, as required to save the claims under *Alice* Step 2. *Id*. at 1354-56.

      1.    <u>Claims 1 and 3 Are Ineligible under *Alice* Step 1 Because They Are Directed to an Abstract Idea.</u>

The first step in the patent eligibility inquiry asks "whether the claims at issue are directed to a patent-ineligible concept," *e.g.*, an abstract idea. *Alice*, 573 U.S. at 218. To determine whether the claim is "directed to" an abstract idea, the court must determine the "focus of the claimed advance over the prior art" — that is, what is the "character [of the claim] as a whole." *Intellectual Ventures*, 850 F.3d at 1325.

Claims 1 and 3 are directed to "a method of retrieving information from a health report through a machine assisted interrogation process." ['882 Patent, 6:29-30] The alleged advancements over the prior art include clear communication between a health care profession and a consumer, patient understanding, providing relevant information, and simplification of information in a health report. [*Id*. at 1:25-50] In other words, the '882 Patent attempts to claim no more than the mental process associated with communicating information. OptraHealth characterizes prior art methods as "time consuming and inefficient" whereas the claimed process allegedly "frees up physician and other medical

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

professional time and attention to focus on areas that need the medical attention." [Counterclaim, ¶ 9]

The Federal Circuit finds claims covering "longstanding, well-known method[s] of organizing human behavior, similar to concepts previously found to be abstract" directed to abstract ideas. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016) (finding claims covering "content filtering system for filtering content retrieved from an Internet computer network" ineligible under *Alice* Step 1); *Bascom Research., LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 949 (N.D. Cal. 2015) ("the concept of establishing and using relationships between documents is a common, age-old practice" that can be performed mentally).

Claims reading on "organizing human activity with respect to medical information, *i.e.*, abstract processes that can be performed by an individual" are directed to patent ineligible subject matter under 35 U.S.C. § 101. *Salwan v. Iancu*, 825 F. App'x. 862, 866 (Fed. Cir. 2020), *cert. denied sub nom. Salwan v. Hirshfeld*, 141 S. Ct. 2548, 209 L. Ed. 2d 567 (2021) (emphasis added); *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *2-3 (Fed. Cir. Mar. 15, 2022) (holding healthcare credentialing system an abstract idea). "The concept of secure record access and management, in the context of personal health records or not, is an age-old idea." *MyMedicalRecords, Inc. v. Walgreen Co.*, No. 2:13-CV-00631-ODW SH, 2014 WL 7339201, at *3-5 (C.D. Cal. Dec. 23, 2014) (holding method for collecting, accessing, and managing personal health records an abstract idea).

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

Claims directed to collecting, analyzing, monitoring, manipulating, and displaying data have repeatedly been held to be abstract ideas. *CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x. 471, 473-77 (Fed. Cir. 2020) (holding claims directed to a monitoring system configured to report physiological data including heart rate data, for a living being and configured to identify arrhythmia events from the physiological data ineligible under 35 U.S.C. § 101); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366-68 (Fed. Cir. 2019) (holding method for integrating physiological data from bedside machine directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data"); *Elec. Power Grp., LLC*, 830 F.3d at 1353-56 (holding claimed method requiring collection, analysis, and display of information in the power-grid field patent ineligible); *Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763, 772-75 (N.D. Ill. 2015) (holding method using computer hardware and software to collect, monitor, and analyze water data directed to abstract idea). Like the claims at issue in *CardioNet*, the claims of the '882 Patent involve only generic, healthcare data analysis:

> [T]he claims are not directed to specific methods for identifying cardiac events or determining correlation between machine- and human- identified events, nor do the specifications disclose specific methods for doing so. Instead, the claims and specifications treat those steps as conventional processes, and therefore the claims cannot be said to require anything more than generic data analysis.

*CardioNet*, 816 F. App'x. at 475.

The *Alice* inquiry focuses on the claim language itself. *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 882 (N.D. Cal. 2019), *aff'd sub nom. Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x. 529 (Fed. Cir. 2020). Examination

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

of OptraHealth's claims—in conjunction with the corresponding mental steps—makes clear that the '882 Patent is directed to using a computer to communicate health information, and interaction which has long been performed by human beings.  *See SmartGene, Inc. v. Advanced Biological Lab'ys, SA*, 555 F. App'x. 950, 954-56 (Fed. Cir. 2014) (holding claim that "does no more than call on a 'computing device,' with basic functionality for comparing stored and input data and rules, to do what doctors do routinely" patent ineligible under 35 U.S.C. §101).

| Claim Language | Example of Mental Steps |
|---|---|
| 1.  A method of retrieving information from a health report through a machine assisted interrogation process comprises the steps of:<br><br>(A) providing a personal assistance device, wherein the personal assistance device is communicably coupled with a reporting system;<br><br>(B) providing a reporting system, wherein the reporting system comprises a plurality of health reports and a query-interrogation system; | A healthcare assistant is provided with a patient's health records which are part of a larger reporting database, whether electronic or on paper.<br><br>The database includes an index or key to help with location of documents and search and query functions. |
| (C) receiving a health report-related query through the personal assistance device, wherein the health report-related query corresponds to a specific health report from the plurality of health reports;<br><br>(D) forwarding the health report-related query to the reporting system through the personal assistance devise;<br><br>(E) selecting the specific health report from the plurality of health reports through the query-interrogation system; | The healthcare assistant is asked a question, in person or by electronic means, related to the patient's health reports within the database.<br><br>The healthcare assistant uses the index, or asks another person to use the index, to find the information sought by the patient, whether in person or by electronic means. |
| (F) compiling a corresponding knowledge corpus for the specific health report through a knowledge- graphing system, wherein the corresponding knowledge corpus includes a query- related knowledge graph and a report-related knowledge graph;<br><br>(G) extracting a list of query- related information from the corresponding knowledge corpus of the specific health | A healthcare assistant creates a report based on the patient's question and a report based on trends seen in the patients care over time or desired levels related to the patient's question to provide a baseline for comparison of the specific health report.<br><br>The healthcare assistant extracts a list related to the patient's question and |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

| | |
|---|---|
| report by comparing and associating the query-related knowledge graph with the report- related knowledge graph through the knowledge- graphing system; | compares the information responsive to the patient's query with the patient's file. |
| (H) forwarding the list of query-related information from the reporting system to the personal assistance device;<br><br>(I) converting the list of query-related information to an output content file through the query-interrogation system; and<br><br>(J) outputting the output content file through the personal assistance device. | The healthcare assistant shares information with the patient, whether electronically or in person. |

OptraHealth's allegation that the patented method "allows both people and computers to process data efficiently and unambiguously" reinforces the long-standing nature of the claimed mental process. [Counterclaim, ¶ 11] Moreover, the fact that OptraHealth accuses Invitae's Gia Chatbot of infringing the '882 Patent confirms that the Asserted Claims are directed at a mental process. [Counterclaim, ¶¶ 16, 17, 21, 23, 24]



This is because Invitae's Gia Chatbot uses an interactive computer program that mimics human conversation in the place of a human being which follows the same steps and is provided with the same information as a human being carrying out the method. [*See* ECF No. 43-2] As such, OptraHealth's own infringement allegations confirm that the '882 Patent is directed to organizing human activity with respect to medical information. *See Salwan*, 825 F. App'x. at 866.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

2.   Claims 1 and 3 Are Ineligible under *Alice* Step 2 Because They Do Not Recite an Inventive Concept.

Since the '882 Patent is directed to an abstract idea under *Alice* Step 1, *Alice* Step 2 must be applied to determine whether the patent amounts to "significantly more than" a patent on an abstract idea.  *See Alice*, 573 U.S. at 221-27.  "Stating an abstract idea while adding the words 'apply it with a computer' will not render an abstract idea non-abstract. There must be more." *Tranxition, Inc. v. Lenovo U.S. Inc.*, 664 F. App'x. 968, 971-72 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 223).  Specifically, the "more" requires an inventive concept in the form of an improvement in computer functionality.  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364-65 (Fed. Cir. 2020); *Tranxition*, 664 F. App'x. at 972 (holding patented method for transferring a computing system's settings to another computer invalid because the method does not provide an improvement to computer functionality).  The '882 Patent fails to acknowledge any improvement in *computer functionality*.  Instead, the '882 Patent claims an alleged improved communication between healthcare workers and patients solely as a result of generic computer functionality.  That is not enough.

The claim language must "purport to improve the functioning of the computer itself" rather than merely implementing a method on "some unspecified, generic computer." *Customedia*, 951 F.3d at 1362-66 (quoting *Alice*, 573 U.S. at 225-26) (holding claims to method for ensuring storage space is available for advertising data an abstract idea).  In *Customedia*, the improvements identified in the specification were "generic speed and efficiency improvements inherent in applying the use of a computer to any task."  *Id*. at 1365.  Improving the user's experience through the use of a computer, however, does not

improve the functioning of the computer itself and is not sufficient to render an abstract idea non-abstract.

The patent claims must describe "*how* to solve the problem in a manner that encompasses something more than the principle in the abstract." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x. 529, 533 (Fed. Cir. 2020) (internal citation omitted). The '882 Patent does not claim any "solution [] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Claims that describe a desired function or outcome rather than a concrete embodiment are insufficient to satisfy 35 U.S.C. § 101. *Visual Interactive Phone Concepts, Inc. v. U.S. Cellular Corp.*, 220 F. Supp. 3d 867, 873 (N.D. Ill. 2016); *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269-72 (Fed. Cir. 2016); *SmartGene,* 555 F. App'x. at 954-56 (claims directed to "comparing new and stored information and using rules to identify medical options" are patent-ineligible mental processes). Reciting "the application of an abstract idea using conventional and well-understood techniques specified in broad, functional language" is also insufficient to satisfy 35 U.S.C. § 101. *Dropbox*, 815 F. App'x. at 534. The claims of the '882 Patent are drafted in a results oriented way without claiming any specific, non-generic software (including algorithms or data structures) or hardware. *Aftechmobile Inc. v. Salesforce.com, Inc*., No. 19-CV-05903-JST, 2020 WL 6129139, at *6-9 (N.D. Cal. Sept. 2, 2020), *aff'd*, 853 F. App'x. 669 (Fed. Cir. 2021) (holding claims with functioning requiring computer program code patent ineligible where the claim does not

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

specify how to write the computer program code required to achieve the described functionality).

There are no descriptions in the '882 Patent that rise above generic descriptions of functionality. For example, references to the "personal assistance device" include a variety of functions that are performed "through the personal assistance device" including (1) utilizing a personal assistance device to submit or receive a query ['882 Patent, Abstract, 6:38-39]; (2) "[f]orwarding the health report-related query . . . through the personal assistance device" [*id*., Fig. 3A, 6:42-44]; (3) "[o]utputting the output content through the personal assistance device" [*id*., Fig. 3B; 6:63-63]; (4) "[r]eplaying the playable media file through the personal assistance device" [*id*., Fig. 4; unasserted claim 2]; and (5) receiving a request through the personal assistance device [*id*., 6:15-16, 6:38-41]. Neither the claim language or nor the specification articulate any alleged improved functionality in the "personal assistance device."

Likewise, the "reporting system" is described as "compris[ing] a plurality of health reports and a query-interrogation system" [*id*., 2:31-32], "preferably managed by at least one remote server" [*id*., 2:33-34], and "communicably coupled" with the personal assistance device [*id*., 2:41-42]. None of these limitations introduce any requirements beyond those found in widely available database systems accessible by computer.

The "query-interrogation system" extracts "the required information from the plurality of the health reports according to the user input" [*id*., 2:37-38], generates relevant responses [*id*., 4:17-23], forwards information [*id*., 4:55-59], can have unspecified artificial intelligence modules embedded in the system [*id*., 5:15-17], selects health reports [*id*.,

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

6:45-47], and converts information to an output file [*id.*, 6:60-63].  Notably absent is any disclosure relating to *how* extraction is performed, *how* health reports are selected, *how* responses are generated, or *how* the information is converted to an output file.  The patent vaguely mentions the use of intersection points to extract the information but is devoid of any specificity as to how the intersection points are determined or any improved algorithm that is used in the extraction.  The functions present add nothing additional to the routine interactions between a doctor and a patient: the patient asks a question, the doctor reviews the information in the patient's health reports based on the question asked, the doctor determines the response to the question, the doctor shares the response with the patient based on the doctor's education, experience, or training.

OptraHealth also does not claim any improvement in the order the steps are performed.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1345-49 (Fed. Cir. 2014) (holding claimed method involving extracting data, recognizing information, and storing that information ineligible under step two because all limitations recited well-known, routine, and conventional functions of scanners and computers).  Instead, the steps are performed in the same logical progression as they would be performed by a healthcare worker rendering care in an office or hospital.

The "knowledge-graphing system" *compiles* a knowledge corpus for the specific health report ['882 Patent, 2:56-57], *scans* the specific health report to identify relevant information [*id.*, 2:67-3:2], *generates* reports and expressions by *applying* a coreference resolution method [*id.*, 3:5-8, 55-57], *extracting* information from the knowledge corpus of the specific health report [*id.*, 4:46-49], *comparing* the query-related knowledge graph

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

to the report-related knowledge graph [*id.*, 4:49-51], *determining* intersection points used to extract the list of query-related information [*id.*, 4:52-54].  The specification does not describe any non-conventional machines, modules, or algorithms for performing these functions beyond those that are well-understood, routine, and conventional.

Claim 3's requirement of a graphical user interface is no different.  The use of a computer does not amount to an "inventive concept" required to save the claims at Step 2 of the inquiry.  *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (recitation of generic computer components including a graphical user interface does not provide an inventive concept).  The claims recite generic computer components including "a personal assistance device."  Other computer components described by their function, without the corresponding structure required—not even in the specification— include "reporting system," "query-interrogation system," and "knowledge-graphing system."  [*Id.* at Claim 1]  *Dropbox*, 815 F. App'x. at 537 (finding insufficient structure in claim requiring formatting data into fields and tagging said data as required for patentability under 35 U.S.C. § 101).

"Invocation of already-available computers that are not themselves plausibly asserted to be an advance, for use in carrying out improved mathematical calculations" is well-understood, routine, and conventional prohibiting a finding of patent eligibility at *Alice* Step 2.  *SAP Am., Inc.*, 898 F.3d at 1170.  The claimed components are conventional components performing conventional roles as claimed in the '882 Patent, and there is no allegation that these elements somehow represent a technical advancement over the art.  As

1    a result, the Asserted Claims merely cover an abstract idea and are patent ineligible under

2    35 U.S.C. § 101.

3         C.     *Twombly* Pleading Standard Requires Plausible, Non-Speculative Factual
               Allegations.
4

5         To survive a motion to dismiss under Rule 12(b)(6), a complaint or counterclaim,

6    must allege factual allegations that, if true, would "raise a right to relief above the speculative

7    level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, a complaint must

8    contain sufficient factual matter to state a claim for relief that is plausible on its face.

9    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   A

10   complaint is insufficient under Rule 8 if it offers only "labels and conclusions" or "a

11   formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting

12   *Twombly*, 550 U.S. at 555).  "The pleading standard articulated in *Twombly* and *Iqbal*

13   appl[ies] in the patent context."  *Big Baboon, Inc. v. SAP Am., Inc.*, No. 17-CV-02082-HSG,

14   2018 WL 1400443, at *2 (N.D. Cal. Mar. 20, 2018) (internal citation omitted).

15        With regard to direct infringement, an entitlement to relief exists if a complaint's

16   factual allegations "sufficiently articulate *how* [the] use of the product can be said to

17   constitute infringement of at least [one] claim[] of the patent-in-suit."  *Varian Med. Sys.,*

18   *Inc. v. Elekta AB,* No. 15-CV-871-LPS, 2016 WL 3748772, at *4 (D. Del. July 12, 2016)

19   (emphasis in original); *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-CV-06795-EJD, 2017

20   WL 2311407, at *4 (N.D. Cal. May 26, 2017) (dismissing direct infringement patent claims

21   because complaint makes no factual allegations about how" the accused product operates).

22        In order to state a claim for indirect infringement, the complaint must, in addition to

23   sufficiently alleging factual support for direct infringement, allege specific facts supporting

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

the indirect infringement claim.  *People.ai, Inc. v. SetSail Techs., Inc.*, No. C 20-09148 WHA, 2021 WL 2333880, at *6 (N.D. Cal. June 8, 2021).

Similarly, allegations of willful infringement must be pled; allegations of mere direct infringement are insufficient.  *Sonos, Inc. v. Google LLC*, No. C 21-07559 WHA, 2022 WL 799367, at *3 (N.D. Cal. Mar. 16, 2022), leave to appeal denied, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022).  Under Rule 9(b), even though "knowledge may be alleged generally and without the specificity of fraud," knowledge must still be alleged with plausibility, and "a mere allegation of 'knowledge' remains conclusory and insufficient." *Id.*

D.    OptraHealth's Conclusory Allegations Fail to Satisfy the Pleading Standard.

OptraHealth fails to provide any factual allegations that Invitae's product infringes claim 1's requirement that the Accused Product perform the step of "compiling . . . through a knowledge-graphing system, wherein the corresponding knowledge corpus includes a query-related knowledge graph and a report-related knowledge graph."  OptraHealth's conclusory statements do not provide notice as to "how" Invitae purportedly meets this limitation.  [*See* Counterclaim, p. 16]  For example, what does OptraHealth allege is Invitae's knowledge-graphing system?  And under OptraHealth's attempted application of claim 1 of the '882 Patent, how do the query-related knowledge graph and the report-related knowledge graph comprise the knowledge corpus?

To assert a claim for direct infringement under 35 U.S.C. § 271(a), OptraHealth must allege that Invitae's Accused Product performs each and every limitation set forth in one of the claims of its patent.  OptraHealth's complaint fails to allege that Invitae

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

practices the limitations associated with the "knowledge-graphing system," the "query-related knowledge graph," and a "report-related knowledge graph."  ['882 Patent, Claim 1, 6:49-57]

> 1. Indirect Infringement Allegations.

Induced infringement under 35 U.S.C. § 271(b) first requires direct infringement by someone else which OptraHealth has failed to plead.  OptraHealth advances only conclusory allegations mentioning Invitae's partners or customers without mentioning who these people are or how they perform each and every limitation of a valid claim of the '882 Patent.  [Counterclaim, ¶¶ 28, 29]

Induced infringement further requires allegations of induced infringement.  In *People.ai, Inc. v. SetSail Technologies, Inc.*, the patentee's complaint contained a "perfunctory recitation of the elements of induced infringement," namely that ". . . SetSail had knowledge of an intended to cause direct infringement by others and/or SetSail willfully blinded itself to the existence of the '634 patent and such infringement."  No. 20-09148 WHA, 2021 WL 2333880, at *6 (N.D. Cal. Jun 8, 2021).  The *People.ai* court explained that the patentee had "simply couched its legal conclusions in the guise of factual allegations, which *Twombly* and *Iqbal* soundly rejected" and that "bare allegations of knowledge of a patent do not support an inference of knowledge of alleged infringement."  *Id*.  Accordingly, the *People.ai* court found that the patentee did not adequately plead induced infringement.  *Id*.  OptraHealth's induced infringement allegations are similarly insufficient.  OptraHealth merely parrots the language of 35 U.S.C. §271(b) alleging that Invitae intended to cause infringement by others and makes

bare allegations of knowledge, specific intent and willful blindness.  [Counterclaim, ¶¶ 28, 29]  OptraHealth fails to provide any factual allegations explaining how any alleged actions induce infringement.  As such, OptraHealth's induced infringement allegations fail to state a claim.

2.   <u>Willfulness Allegations.</u>

OptraHealth accuses Invitae of willful infringement of Claims 1 and 3 of the '882 Patent.  [Counterclaim, ¶ 31]  The heightened pleading standard under Fed. R. Civ. P. 9 applies to willful infringement claims "limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (2016).  Willfulness must be alleged with plausibility.  *Sonos*, 2022 WL 799367, at *3.  OptraHealth's conclusory, one line statement that "Invitae's infringement has been and continues to be willful" [Counterclaim, ¶ 31] does not meet the pleading standard under Fed. R. Civ. P. 8 much less the heightened pleading standard applicable to wilfullness.  OptraHealth's conclusory allegation of willful infringement is further belied by Invitae filing this declaratory judgment action, which specifically denies any direct, indirect, or willful infringement.  [*See* ECF No. 1]

**V.**   **<u>Conclusion.</u>**

Wherefore, for the foregoing reasons, Plaintiff Invitae Corporation respectfully requests that the Court find claim 1 and 3 of the '882 Patent patent-ineligible and invalid under §101, and grant Plaintiff Invitae Corporation's Motion to Dismiss Defendant's Counterclaim with prejudice.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1    Dated:  August 12, 2022                    Respectfully submitted,

2                                               **BRYAN CAVE LEIGHTON PAISNER LLP**

3                                               By: /s/     *K. Lee Marshall*

4                                               K. Lee Marshall (SBN #277795)
                                                klmarshall@bclplaw.com
5                                               BRYAN CAVE LEIGHTON PAISNER LLP
                                                Three Embarcadero Center, 7th Floor
6                                               San Francisco, California 94111
                                                Telephone: (415) 675-3444

7                                               Erin A. Kelly (Admitted *pro hac vice*)
                                                Erin.Kelly@bclplaw.com
8                                               BRYAN CAVE LEIGHTON PAISNER LLP
                                                1700 Lincoln Street, Suite 4100
9                                               Denver, CO 80203
                                                Telephone: (303) 866-0422
10

11                                              George C. Chen (*pro hac vice* to be filed)
                                                george.chen@bclplaw.com
12                                              Cory G. Smith (*pro hac vice* to be filed)
                                                cory.smith@bclplaw.com
13                                              BRYAN CAVE LEIGHTON PAISNER LLP
                                                Two North Central Avenue, Suite 1200
14                                              Phoenix, Arizona 85004
                                                Telephone: (602) 364-7000
15

16                                              *Attorneys for Defendant Invitae Corporation*

17

18

19

20

21

22

23

24

25

26

27

28