K. Lee Marshall, SBN 277795
klmarshall@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
Three Embarcadero Center, 7ᵗʰ Floor
San Francisco, CA  94111-4070
Telephone:     (415) 675-3400

Erin A. Kelly (Admitted *pro hac vice*)
erin.kelly@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
1700 Lincoln Street, Ste. 4100
Denver, CO  80203
Telephone:  (303) 861-7000

*Attorneys for Plaintiff*
*Invitae Corporation*

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7ᵀᴴ FLOOR
SAN FRANCISCO, CA  94111-4070

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| INVITAE CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>OPTRAHEALTH, INC.,<br><br>                    Defendant. | Case No.: 4:22-cv-00784-HSG<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>**INVITAE CORPORATION'S REPLY TO DEFENDANT OPTRAHEALTH'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM**<br><br>**Date: November 10, 2022**<br>**Time: 2:00 pm**<br>**Courtroom: 2**<br><br>Complaint Filed:  February 7, 2022<br><br>Trial Date:        Not Assigned |

# <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT .................................................................................................... 1

    A.  Claims 1 and 3 of the '882 Patent Are Patent-Ineligible Under § 101 .... 1

        1.  Claims 1 and 3 Are Focused on the Abstract Idea of Collecting, Analyzing, and Displaying Medical Information. ........................... 1

            a.  Methods Capable of Execution In the Human Mind or with Pen and Paper Are Abstract, Mental Processes ......................... 1

            b.  OptraHealth Fails to Allege an Improvement in Computer Functioning. ............................................................................. 3

            c.  OptraHealth Fails to Allege Any Specific Improvement to A Technological Problem .............................................................. 4

        2.  Claims 1 and 3 Fail to Recite an Inventive Concept. ..................... 6

            a.  There Is No Evidence That Claims 1 and 3 Contain an Inventive Concept Beyond the Abstract Idea. ............................ 6

            b.  OptraHealth's Claimed Arrangement Is Entirely Conventional. ............................................................................. 8

            c.  OptraHealth Misconstrues Applicable Case Law. .................... 9

    B.  The Court Should Rule on the Motion Now. ........................................... 10

    C.  OptraHealth's Counterclaim Also Fails Basic Pleading Standards. .... 12

III.  CONCLUSION ............................................................................................... 14

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7ᵀᴴ FLOOR
SAN FRANCISCO, CA 94111-4070

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018) ................................. 4, 5

5

6

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
    915 F.3d 743 (Fed. Cir. 2019) ..................................................................................... 10

7

8

*Audio Evolution Diagnostics, Inc. v. United States*,
    160 Fed. Cl. 513 (Fed. Cl. July 1, 2022) .................................................................... 11

9

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ................................................................................. 3, 6

10

11

*Bascom Research., LLC v. LinkedIn, Inc.*,
    77 F. Supp. 3d 940 (N.D. Cal. 2015) ..................................................................... 1, 3, 7

12

13

*Boston Scientific Corp. Nevro Corp.*, Case No. 18-cv-0644-CFC, 415 F. Supp. 3d 482 (D. Del. Nov. 25, 2019) ......................................................................................................................... 12

14

15

*buySAFE, Inc. v. Google Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ................................................................................. 10

16

17

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) .................................................................................. 9, 10

18

19

*Cogent Med., Inc. v. Elsevier Inc.*,
    70 F. Supp. 3d 1058 (N.D. Cal. 2014) .......................................................................... 7

20

21

*Collarity, Inc. v. Google Inc.*,
    No. 11-1103-MPT, 2013 U.S. Dist. LEXIS 64106 (D. Del. May 6, 2013) ................. 10

22

23

*Collarity, Inc. v. Google Inc.*,
    No. 11-1103-MPT, 2015 U.S. Dist. LEXIS 159031 (D. Del. Nov. 25, 2015) .......................................................................................................................... 5, 10

24

25

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ................................................................................. 2, 4

26

27

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) .................................................................................... 1

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7ᵀᴴ FLOOR
SAN FRANCISCO, CA 94111-4070

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
    No. 22-CV-00561-JSW, 2022 WL 1556417 (N.D. Cal. May 17, 2022) .............. 12, 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ........................................................................ 8

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ................................................................... 9

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .................................................................... 1, 5

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .................................................................... 4, 5

*Estech Sys., Inc. v. Regions Fin. Corp.*,
    Case No. 6:20-cv-00322-ADA, 2020 WL 6324321 (W.D. Tex. Oct. 28,
    2020) ............................................................................................................... 12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ........................................................................ 4

*Fitbit Inc. v. AliphCom*,
    No. 16-CV-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017) .......................... 8

*Frost v. LG Electronics Inc.*,
    Case No. 16-cv-05206-BLF, 2018 WL 6256790 (N.D. Cal. July 9, 2019) .............. 14

*Google LLC v. EcoFactor, Inc.*,
    No. 21-cv-03220-HSG, 2022 U.S. Dist. LEXIS 82508 (N.D. Cal. May 6,
    2022) ................................................................................................................. 9

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ........................................................................ 2

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ........................................................................ 1

*Lexington Luminance LLC v. Service Lighting and Electrical Supplies, Inc.*,
    Case No. 3:18-cv-01074-K, 2018 WL 10425908 (N.D. Tex. Oct. 9, 2018) .............. 12

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) .................................................................... 4, 5

*Mentone Sols. LLC v. Digi Int'l Inc.*,
    No. 2021-1202, 2021 WL 5291802 (Fed. Cir. Nov. 15, 2021) ..................... 9

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

-III-
INVITAE'S REPLY TO OPPOSITION TO MOTION TO DISMISS

*Pers. Beasties Grp. LLC v. Nike, Inc.*,
  341 F. Supp. 3d 382 (S.D.N.Y. 2018), *aff'd*, 792 F. App'x 949 (Fed. Cir. 2020) ................................................................................................ 8, 9

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
  827 F.3d 1042 (Fed. Cir. 2016) .............................................................. 8

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ........................................................... 2-3

*Smart Authentication IP, LLC v. Elec. Arts Inc.*,
  402 F. Supp. 3d 842 (N.D. Cal. 2019) ................................................. 13

*Tranxition, Inc. v. Lenovo U.S. Inc.*,
  664 F. App'x 968 (Fed. Cir. 2016) ...................................................... 3, 4

*TS Pats. LLC v. Yahoo! Inc.*,
  279 F. Supp. 3d 968 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 978 (Fed. Cir. 2018) ..................................................................................................... 2

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*
  793 F.3d 1306, 1335 (Fed. Cir. 2015) ................................................... 3

**Statutes**

35 U.S.C. § 101 ......................................................................... *passim*

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

## I.    INTRODUCTION

OptraHealth admits that the "point of the invention" is to "automate tasks that humans are capable of performing." Opposition at p. 2.  That admission is fatal to claims 1 and 3 of U.S. Patent No. 10,754,882 (the '882 Patent) because claims embodying mental processes and longstanding human practices are invalid. *See Bascom Research, LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 950-54 (N.D. Cal. 2015).  Simply executing those steps with a generic computer cannot save them.  For that reason, and because OptraHealth fails to allege plausible facts demonstrating infringement of each element of the claims, this case should be dismissed.

## II.    ARGUMENT

### A.    Claims 1 and 3 of the '882 Patent Are Patent-Ineligible Under § 101.

Claims 1 and 3 of the '882 Patent are patent-ineligible under *Alice*'s two-step analysis for 35 U.S.C. § 101 because they are directed to an abstract idea of collecting, analyzing, and displaying medical information.

#### 1.    Claims 1 and 3 Are Focused on the Abstract Idea of Collecting, Analyzing, and Displaying Medical Information.

OptraHealth's argument (Opposition at p. 11) that its claims are directed to specific improvements in machine-assisted functionality and mobile devices has no factual support. Implementing an abstract idea on an unspecified, generic computer without improvement to the functionality of the computer itself does not transform the abstract idea to a patent-eligible technical solution to a technical problem. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354-56 (Fed. Cir. 2016) (holding ineligible claimed method requiring collection, analysis, and display of information).

##### a.    Methods Capable of Execution In the Human Mind or with Pen and Paper Are Abstract, Mental Processes.

Ineligible mental processes include those that "can be performed in the human mind, or by a human using a pen and paper." *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see also Intellectual Ventures I LLC v. Symantec Corp.,*

838 F.3d 1307, 1318 (Fed. Cir. 2016).  OptraHealth fails to articulate any steps beyond what humans were capable of doing entirely in their own mind or on pen and paper.

Instead, OptraHealth admits "the point of the invention [ ] is to automate tasks that humans are capable of performing." Opposition at p. 8.  That is true; the claim language mirrors the steps performed by a healthcare worker without the use of a computer or mobile device. *See* Motion at p. 14-15.  First, the person has access to health records from a database organized according to a reporting system (e.g. index or key for ease of access), the person is asked a question pertaining to the records, the person uses the index to locate the information sought, the person compiles a report based on the question and trends seen in the patient's care over time or desired levels, the person extracts a list of responsive information, and finally, the person shares the information with the requester. *Id*.  That is nothing different than what a health care worker has done for decades.

OptraHealth repeatedly argues the claimed method is an improvement because it reduces inefficiencies that exist when the method is entirely practiced by humans. *See e.g.* Opposition at p. 2, 3, 4, 9, 10, 11, 12, 13, 16.  Maybe so.  But improvements in efficiency do not amount to the required improvement in computer technology required to satisfy *Alice* Step 1. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363-65 (Fed. Cir. 2020) (improved speed and efficeincy resulting from claimed invention does not improve the functionality of the computer itself, it merely improves the abstract concept); *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."); *TS Pats. LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 972-88 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 978 (Fed. Cir. 2018) (holding claims ineligible where the claim did not specifically improve any algorithm, data structure, or hardware components and asserted improvement in efficiency was not mentioned in claims); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161,

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

1168-70 (Fed. Cir. 2018) (improvement in the selection and mathematical analysis of information, followed by the reporting or display of results, is not patent eligible).

OptraHealth next argues that the patent claims are not abstract because they are directed to "concrete improvements." Opposition at p. 2, 9.  But simply reciting computer hardware elements in a claim does not morph an ineligible abstract idea into something non-abstract.  In *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, the Federal Circuit determined that just because the claims recited computer hardware limitations, it did not add meaningful limitations beyond the abstract idea because the underlying process "could also be performed via pen and paper." 793 F.3d 1306, 1331-35 (Fed. Cir. 2015).  Here, OptraHealth argues that "applying machine-learning to the task to automate the process, using a personal assistance device to provide an interface for a query-interrogation system, and applying a knowledge-graphing system to provide the accurate results to the user" is a concrete improvement. Opposition at 2, 9.   But the claimed improvement - applying, using (collecting), applying (analyzing), and provid[ing] (displaying) medical information on a computer (mobile device) — aligns with the "longstanding, well-known method[s] of organizing human behavior, similar to concepts previously found to be abstract." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016) (finding claims covering "content filtering system for filtering content retrieved from an Internet computer network" ineligible under *Alice* Step 1); *Bascom Research, LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 949 (N.D. Cal. 2015) ("the concept of establishing and using relationships between documents is a common, age-old practice" that can be performed mentally).  As such, the claimed method involves only patent-ineligible mental processes.

### b.   OptraHealth Fails to Allege an Improvement in Computer Functioning.

OptraHealth injects considerations traditionally undertaken in Step 2 of *Alice/Mayo* in its Step 1 Analysis.  Under Step 2, "[s]tating an abstract idea while adding the words 'apply it with a computer' will not render an abstract idea non-abstract.  There must be

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

more." *Tranxition, Inc. v. Lenovo U.S. Inc.*, 664 F. App'x 968, 971-72 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 223).  Specifically, the "more" requires an inventive concept in the form of an improvement in computer functionality. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364-65 (Fed. Cir. 2020); *Tranxition,* 664 F. App'x at 972.

Here, a computer performs the claimed algorithm or method to accomplish a specific task—automating the abstract idea of collecting, analyzing, and displaying medical information. *See generally* '882 Patent.  But the mere use of a computer to run a method or algorithm does not amount to a computer improvement. *Customedia Techs.*, 951 F.3d at 1362-63.  In *Customedia*, the Federal Circuit distinguished using a computer to deliver content to a user from improving the functioning of a computer, and affirmed the district court's finding of invalidity under § 101. *Id.*  OptraHealth does not and cannot allege any facts supporting its assertion that its machine-assisted method for retrieving health reports improves personal assistance devices, such as a mobile device.  Further, OptraHealth's reliance on case law is misplaced because the cited cases do not involve claims that collect, analyze, and display information. *See Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018) (improvement in computer security); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018) (virus scanning); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) (improvement to storage and retrieval from memory); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (3-D animation method).  OptraHealth fails to identify or explain how its method claims an computer improvement, as opposed to a mere computer implementation of an abstract idea.

### c.   OptraHealth Fails to Allege Any Specific Improvement to A Technological Problem.

OptraHealth repeatedly argues that it makes a specific improvement to a technological problem. Opposition at p. 11, 13, 14, 15.  But OptraHealth simply parrots the claim language and labels it a "specific improvement." *Id.* at 15.  OptraHealth defines the "specific improvement" as "creating a knowledge corpus through a knowledge graphing

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

system" and "retrieving and providing accessibility to health reports." *Id*. at 14-15. Interestingly, OptraHealth cites *Elec. Power Grp., LLC v. Alstom S.A*., 830 F.3d 1350, 1354 (Fed. Cir. 2016), for its assertion that "using machine-assisted method for retrieving health reports by creating a knowledge corpus to provide a query-interrogation system" is a basic computer function. Opposition at p. 15.  In *Elec. Power Grp*., the Federal Circuit addressed claims analogous to the asserted claims and held the method requiring collection, analysis, and display of information patent ineligible. *Elec. Power Grp.*, 830 F.3d at 1354-56.

The specific improvements identified in the cases cited by OptraHealth are readily distinguishable from OptraHealth's use of a generic computer to implement an abstract idea. *See Ancora Techs.,* 908 F.3d at 1348 (claimed method specifically identified *how* the computer functionality improvement is effectuated: a structure containing a license record is stored in the computer and used for verification by interacting with the distinct computer memory that contains the program to be verified); *Enfish,* 822 F.3d at 1339 (claims reciting a self-referential table not directed to an abstract idea because the table is a specific type of data structure); and *McRO*, 837 F.3d at 1313 ("the claims are limited to rules with specific characteristics" because "the claims themselves set out meaningful requirements . . . defin[ing] a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence.").

OptraHealth argues that past methods utilized boolean and arithmetic type operators that do not understand the underlying semantics of the data. Opposition at p. 4, 11.  This contention is entirely unsupported by the '882 Patent which never mentions boolean operators. *See* '882 Patent.  OptraHealth fails to articulate *how* the claimed invention improves upon the allegedly inferior prior art searching methods.  Even if OptraHealth could articulate an inventive concept involving the boolean operators, this would not be sufficient to confer subject matter eligibility under *Collarity, Inc. v. Google Inc*., No. 11-1103-MPT, 2015 U.S. Dist. LEXIS 159031, at *37 (D. Del. Nov. 25, 2015) ("*Collarity II*) discussed in Section II.A.2.c, *infra*.  OptraHealth again resorts to human rather than technological

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

deficiencies when framing the problem purportedly solved by the claimed invention. Opposition at p. 11.

OptraHealth repeats the vague language of the claim labeling it as innovative. Opposition at p. 13 ("Use of the knowledge corpus enables the innovative methods to assimilate and extract a large amount of information related to the query and the health report.).  Even if OptraHealth alleged, which it does not, that the claimed invention was directed to improved operators for searching through the medical health information, the claims would not be patent eligible under *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016).  In *Bascom Glob.*, the Federal Circuit held a method of filtering content ineligible as a longstanding, well-known method of organizing human behavior. *Id*.  OptraHealth's failure to identify any specific improvement to a technological problem demonstrates that claims 1 and 3 are directed to an abstract idea.

### 2.    Claims 1 and 3 Fail to Recite an Inventive Concept.

First, OptraHealth argues that one or more of the individual claim limitations possesses an inventive concept. Opposition at p. 7, 16-17.  But OptraHealth fails to identify any allegedly inventive claim limitation and the case law cited by OptraHealth overlaps with the *Alice/Mayo* Step 1 analysis addressed in Section II.A.1, *supra*. Opposition at p. 16-17. Second, OptraHealth argues that the asserted claims have an inventive concept because of the "non-conventional and non-generic arrangement of known, conventional pieces." *Id.*

#### a.    There Is No Evidence That Claims 1 and 3 Contain an Inventive Concept Beyond the Abstract Idea.

OptraHealth broadly argues that the inventive concept lies in the use of "machine-assisted processes, knowledge graphing systems, and query-interrogation system technology" and that the problem "specifically aris[es] in the realm of machine-learning systems." Opposition at p. 17.  In an attempt to narrow the assertion, OptraHealth frames the improvement as "extracting a list of query-related information from the corresponding knowledge corpus of the specific health report by comparing and associating the query-related knowledge graph with the report-related knowledge graph through the knowledge-

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

graphing system." *Id*. at p. 9.  And finally, OptraHealth characterizes the improvement as "an improved method of hardware, software, network communication, for retrieving information from a health report through a machine-assisted interrogation process by creating a knowledge graph and knowledge corpus [on the fly, as prompted by the user] to provide [or link] the query-interrogation capability via a personal assistance device." Opposition at p. 12, 13.

OptraHealth's feigned inventive concepts are insufficient.  "Using a computer to identify and supply new medical literature merely automates what was previously done manually by assistants or librarians." *Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1064-66 (N.D. Cal. 2014) (holding a patent with novel automated search and matching function that identifies information based on common ground between prior search strategies subject matter ineligible).  The *Cogent* court determined that the patent at issue claimed "no more than a computer automation of what can be performed in the human mind, or by a human using a pen and paper." *Id*. at 1065 (internal citation omitted).  Similarly, in *Bascom Research, LLC*, 77 F. Supp. 3d at 950-54, the Court held the claimed concept of establishing, storing and using associations between documents that can be performed mentally lacked an inventive concept.  Here, the '882 Patent itself defines a "report-related knowledge-graph" as "a collection of data from the report and related information from other data sources, organized as a graph of associations of various healthcare entities." '882 Patent, 3:15-18.[1] OptraHealth fails to distinguish the asserted claims from prior art methods held directed to patent ineligible abstract ideas.

Second, OptraHealth's argued technological improvement over the prior art is belied by OptraHealth's repeated argument that the claimed improvement lies in reducing the inefficiency caused by humans. Opposition at p. 2, 3, 4, 9, 10, 11, 12, 13, 16. OptraHealth's

---

[1]    The specification of the '882 Patent fails to define the structure of the "knowledge-graphing system," "knowledge corpus," and "query-related knowledge graph" other than in terms of function. '882 Patent; Motion to Dismiss, p. 5, 6, 19, 20, 22, 23.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

reliance on the *DDR Holdings* and *CellzDirect* cases is misplaced. *Id*. at p. 17.  Unlike the method embodied by the asserted claims here, the problem addressed in *DDR Holdings* does not exist outside of the internet. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (claimed solution for retaining website visitors addresses an internet centric problem that occurs after a visitor clicks on an advertisement and activates a hyperlink).  Further, the claimed method in the *CellzDirect* case is completely devoid of any computer utilization. *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1045-51 (Fed. Cir. 2016) ("the process of preserving [liver cells] by repeating those steps was itself far from routine and conventional" where the prior art disclosed only methods of "*one freeze-thaw cycle*").

### b.   OptraHealth's Claimed Arrangement Is Entirely Conventional.

OptraHealth fails to allege *how* the arrangement is non-conventional or non-generic in its Counterclaim or Opposition.  A patent contains no inventive concept when abstract elements are ordered in a generic and conventional pattern, such as "a user inputs information, the system collects and analyzes other relevant information, and then the system displays through a character the result of its analysis." *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 389 (S.D.N.Y. 2018), *aff'd*, 792 F. App'x 949 (Fed. Cir. 2020).  This district recently reiterated that an ordered combination provides no inventive concept where the claims "follow a conventional order of how data is usually analyzed: data is first received, then processed, then compared against a condition, and the notification is triggered when the condition is met." *Fitbit Inc. v. AliphCom*, No. 16-CV-00118-BLF, 2017 WL 819235, at *17 (N.D. Cal. Mar. 2, 2017).

Just as in *Pers. Beasties* and *Fitbit*, OptraHealth's alleged ordered combination fails to supply an inventive concept.  The plain language of the asserted patent demonstrate that the arrangement is generic and conventional. '882 Patent, Claim 1.  Indeed, the order of the steps could not be more conventional, the user is provided with a mobile device, the device has access to a reporting system, the user submits a question, the question is forwarded to

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1    the reporting system, the health report responsive to the question is selected, a report is

2    compiled with the answer, the report is compared to other data, and the information is

3    displayed to the user on a mobile device.  As such, Claim 1 fails to supply any inventive

4    concept.

5                    **c.    OptraHealth Misconstrues Applicable Case Law.**

6          OptraHealth criticizes the *how* questions posed by Invitae and argues that *Mentone*

7    *Sols. LLC v. Digi Int'l Inc.*, No. 2021-1202, 2021 WL 5291802, at *4 (Fed. Cir. Nov. 15,

8    2021), rejects this approach when the claims include improvements to existing technological

9    processes. Opposition at p. 17.  OptraHealth is incorrect.  As discussed in Sections II.A.1

10   and II.A.2.a, *supra*, the claims here allegedly improve upon longstanding human practices,

11   not existing technological processes.  The questions posed by Invitae are exactly the type

12   that must be asked at this stage of the analysis. *Dropbox, Inc. v. Synchronoss Techs., Inc.*,

13   815 F. App'x 529, 533 (Fed. Cir. 2020) ("The patent has to describe *how* to solve the

14   problem in a manner that encompasses something more than the principle in the abstract.")

15   (internal quotation omitted); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769-70

16   (Fed. Cir. 2019) (affirming grant of motion to dismiss; claims drafted in results-oriented-

17   way are patent ineligible because they encompass the abstract idea of communication over

18   a network).

19         OptraHealth then argues that *Google LLC v. EcoFactor, Inc.*, No. 21-cv-03220-HSG,

20   2022 U.S. Dist. LEXIS 82508, at *6 (N.D. Cal. May 6, 2022), eliminates any requirement

21   for OptraHealth to describe the improvement of the claimed implementation.  In *EcoFactor*,

22   the claim language specifically described the data inputs (outside temperature and inside

23   temperature) and the thermal mass calculation (a predicted rate of change based on the stored

24   temperature, status of the HVAC system, and outside temperature). *Id.*   The computers

25   compare these values to determine whether to pre-cool based on the predicted rate of change

26   prior to reducing electricity demand. *Id.*  A mathematical equation can be envisioned based

27   on the description provided by the Patent in *EcoFactor*.  OptraHealth's asserted patent, in

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

contrast, is completely devoid of any structure. Instead, the structure is masked behind vague terms including "knowledge graphing system," "query-related knowledge graph," "report-related knowledge graph," and "query-interrogation system."

OptraHealth's misplaced citation to *Collarity I* reinforces the conclusion that the asserted claims fail to recite any specific structure. Although OptraHealth notes that in *Collarity I*, the court construed "associating graph" to mean "any data structure . . .", OptraHealth failed to note that the court subsequently determined the claims were invalid under 35 U.S.C. § 101. *Collarity, Inc. v. Google Inc.*, No. 11-1103-MPT, 2013 U.S. Dist. LEXIS 64106, at *13-15 (D. Del. May 6, 2013) ("*Collarity I*") and *Collarity II*, 2015 U.S. Dist. LEXIS 159031, at *37. More specifically, in *Collarity II*, the Court found the claims directed to the abstract idea of refining a search query was known by librarians outside of the computer context and could be practiced using only the human mind. *Id*. at *19-26.

## B.     The Court Should Rule on the Motion Now.

OptraHealth argues that dismissal at this stage is premature and suggests that the "factual record lacks certainty" (Opposition at p. 9), but OptraHealth has failed to identify any allegations that would raise factual issues preventing resolution of the eligibility question as a matter of law. Accordingly, the Court should rule on the Motion at this stage. *See ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 775–77 (Fed. Cir. 2019) (upholding grant of Rule 12(b)(6) motion based on § 101 before claim construction), *cert. denied*, 140 S. Ct. 983 (2020); *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (affirming dismissal for patent-ineligible claims because "[p]atent eligibility under § 101 is a question of law based on underlying facts that may be resolved on a [motion on the pleadings] when the undisputed facts require a holding of ineligibility."); *buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (upholding grant of Rule 12(c) motion based on § 101).

Contrary to OptraHealth's arguments, *Cellspin* does not preclude dismissal at this stage. Just this summer, the Court of Federal Claims granted a defendant's motion to dismiss

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

after it applied *Cellspin* and found the asserted patent claims directed to ineligible subject matter. *Audio Evolution Diagnostics, Inc. v. United States*, 160 Fed. Cl. 513, 529 (Fed. Cl. July 1, 2022). Acknowledging that the "court must and does make all inferences in plaintiff's favor," the Court of Federal Claims (citing *Cellspin*) stated that "the court cannot infer an inventive concept without specific allegations that are "more than simply label[ing] … techniques as inventive." *Id*. at 528. Distinguishing the specific, plausible factual allegations pled in *Cellspin*, the *Audio Evolution* court determined that the allegations there failed to '"point to evidence suggesting its techniques had not been implemented in a similar way,' or 'in a specific combination' that would rise to the level of inventiveness.'" *Id*. at 528 (internal citations omitted).

The *Audio Evolution* court further determined that "[p]laintiff does not provide context that would demonstrate that that its invention is 'significantly more' than an abstract idea or otherwise more than 'the application of conventional and well-understood techniques.'" *Id*. Although the complaint quoted 'disadvantages' of the 'technology field' that were listed in the patent," the *Audio Evolution* court explained that the complaint failed to provide "additional context or explanation as to how plaintiff's invention applied an inventive concept to overcome the disadvantages." *Id*. at 528-29. The *Audio Evolution* court further determined that the plaintiff's response further failed to elaborate or point to facts alleged in the complaint that supported the assertion that the alleged inventive concepts were not "generic, conventional computing components." *Id*. at 529. As such, the *Audio Evolution* court found the asserted patent claims directed to ineligible subject matter. *Id*.

Here, unlike the specific, plausible factual allegations made by *Cellspin*, OptraHealth's allegations are akin to the boilerplate, conclusory allegations that the *Audio Evolution* court explained were inadequate to allege inventive concept. First, none of OptraHealth's allegations are "more than simply label[ing] … techniques as inventive." Second, OptraHealth fails to "point to evidence suggesting its techniques had not been implemented in a similar way" or "in a specific combination" that would rise to the level of

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

inventiveness." Third, OptraHealth's allegations fail to provide additional context or explanation as to *how* its alleged invention applied an inventive concept to overcome the disadvantages of physicians communicating health reports to patients. Fourth and finally, OptraHealth further cannot point to any allegations in the counterclaim that its alleged inventive concepts were not "generic, conventional computing components."

Claims 1 and 3 of the '882 Patent are patent ineligible and this court should grant Invitae's Motion to Dismiss.

**C.    OptraHealth's Counterclaim Also Fails Basic Pleading Standards.**

OptraHealth misconstrues the pleading standards established by *Twombly* and *Iqbal* in arguing that it need not "plead infringement on an element-by-element basis." Opposition at p.13. As the Federal Circuit and district courts have made clear, the pleading standards "require a plausible inference that an accused device meets all of the limitations of the asserted claims." *Estech Sys., Inc. v. Regions Fin. Corp.*, Case No. 6:20-cv-00322-ADA, 2020 WL 6324321, at *2 (W.D. Tex. Oct. 28, 2020) (citing *Lexington Luminance LLC v. Service Lighting and Electrical Supplies, Inc.*, Case No. 3:18-cv-01074-K, 2018 WL 10425908 at *1 (N.D. Tex. Oct. 9, 2018); *see also Bot M8,* 4 F.4th at 1352-1353. OptraHealth's bare bones "allegations" wholly fail to meet the pleading standard and merit dismissal on that basis alone.

In recognition of, and in an attempt to justify, its insufficient conclusory allegations, OptraHealth cites *Disc Disease* and argues that its conclusory allegations are sufficient. Opposition at p. 23. OptraHealth, however, fails to recognize that *Disc Disease* involved only "simple" claims and that district courts have consistently held that the minimal pleadings requirements set forth in *Disc Disease* are not applicable to more complex claims. *See e.g., Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, No. 22-CV-00561-JSW, 2022 WL 1556417, at *3 (N.D. Cal. May 17, 2022); *Boston Scientific Corp. Nevro Corp.*, Case No. 18-cv-0644-CFC, 415 F. Supp. 3d 482, n.2 (D. Del. Nov. 25, 2019); *Lexington Luminance*, 2018 WL 10425908 at *1-2. In contrast to the simplicity of *Disc Disease*, the Northern

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

District of California confirmed that where more complex claims are involved, *Disc Disease* type allegations are insufficient. *Cyph*, 2022 WL 1556417 at *4. In *Cyph*, the court considered more complex claims directed to end-to-end encryption enabled communication platforms allowing the exchange of uncensored communications and information. *Id*. at *1. The *Cyph* court dismissed the complaint because the plaintiff's allegations failed to provide information on *how* the Zoom Meeting product operates and did "nothing more than allege Zoom infringes by reciting the relevant claim language verbatim." *Id*. at *3, 4.

Similar to *Cyph*, OptraHealth's Counterclaim and Opposition do nothing more than regurgitate the claim language in an attempt to support its conclusory allegations. Invitae's Motion identified the deficiencies of each claim limitation. Motion at p. 4-7. For the first time in its Opposition, OptraHealth attempts to support claim limitations "E", "F", and "G." Opposition at p. 24. But this attempt is futile. The Opposition still fails to identify or explain with specificity what Gia's accused but unspecified "features" are or how Gia's accused but unspecified "features" purportedly operate to practice claim limitations "E", "F", and "G." OptraHealth further fails to distinguish the "extracting" limitation from the "query-interrogation system" because it repetitively defines the two terms. As in *Cyph*, OptraHealth's conclusory allegations are insufficient for the more complex technology at issue.

OptraHealth's conclusory allegations are further not cured by OptraHealth's argument (Opposition at p. 24) that Figures 1 and 2 of the '882 Patent provide sufficient example structure. The referenced Figures contain nothing more than arrows connecting boxes containing claim language or generic phrases. '882 Patent, Figs. 1 and 2 (*e.g.*, query-related knowledge graph → knowledge-graphing system → response). In *Smart Authentication IP, LLC v. Elec. Arts Inc*., 402 F. Supp. 3d 842, 852 (N.D. Cal. 2019), this district considered a similar figure and determined the "patent lacks specificity and amounts to generalized steps using generic computer functionality." OptraHealth's reference to these Figures, like its conclusory allegations, is yet another attempt to parrot the claim language.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

OptraHealth's argument (Opposition at p. 22, 24) that it should be permitted discovery to support its allegations is without merit. Permitting OptraHealth "to take merits discovery in order to bolster [its] pleadings would be countenancing the type of fishing expedition disapproved in *Twombly*." *Frost v. LG Electronics Inc.*, Case No. 16-cv-05206-BLF, 2018 WL 6256790 at *6 (N.D. Cal. July 9, 2019). OptraHealth cannot use future discovery to cure its deficient allegations.

Not only does the Counterclaim fail to state a claim against Invitae, but OptraHealth's arguments and admissions make clear that it does not have actual facts to support its infringement allegations. The Court should apply not condone OptraHealth's lax pleading approach and relieve OptraHealth of its obligation to state a plausible claim and should, instead, dismiss the Counterclaim.

## III.   CONCLUSION

For the reasons set forth above and in Invitae's Motion, Invitae respectfully requests that the Court find claims 1 and 3 of the '882 Patent to be patent-ineligible and invalid under §101, and grant Invitae's Motion to Dismiss OptraHealth's Counterclaim.

Dated: September 23, 2022                          Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Erin A. Kelly*
Erin A. Kelly (Admitted *pro hac vice*)
Attorneys for Plaintiff
Invitae Corporation

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7ᵀᴴ FLOOR
SAN FRANCISCO, CA 94111-4070

## **ATTESTATION**

I, Erin Kelly, attest pursuant to the Northern District of Civil Local Rule 5-1(i)(3) that all the signatories on this document agree to the filing's content and have authorized this filing.

By:     /s/  *Erin A. Kelly* ____
Erin A. Kelly

1

**CERTIFICATE OF SERVICE**

2       This is to certify that on the 23rd day of September 2022, I electronically filed the

3   foregoing INVITAE CORPORATION'S REPLY TO DEFENDANT OPTRAHEALTH'S

4   OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM using the Court's CM/ECF

5   filing system which sends notification of such filing to all parties and/or counsel of record.

6

7   DATED: September 23, 2022                    By:    */s/ Darya Oborina*
                                                         Darya Oborina
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070